## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCIA MARANO, | Case No.: |
| on behalf of herself and all others similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | |
| MARYMOUNT MANHATTAN COLLEGE, | |
| Defendant. | |

Plaintiff Lucia Marano ("Plaintiff") brings this Class Action Complaint against Marymount Manhattan College ("MMC" or "Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to her own actions and her counsels' investigations, and upon information and belief as to all other matters, as follows:

### I. INTRODUCTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personal identifiable information ("PII")[1] for past and current students, employees, parents, and applicants to Defendant, including, but not limited to, student ID, date of birth, Social Security Number, employee ID, payment and credit card information, and some other types of information.

2.      According to Defendant's website, Defendant is "an independent, private, dynamic liberal arts college" with approximately 2,000 full-time students.[2]

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] *See* https://www.mmm.edu/about-us/facts-and-figures/ (last visited Aug. 16, 2022).

3. Prior to and through November 12, 2021, Defendant obtained the PII of Plaintiff and Class Members, including the PII of Plaintiff, who was a student at Defendant from approximately 1995 to 2000, and stored that PII, unencrypted, in an Internet-accessible environment on Defendant's network.

4. Defendant's Privacy Statement (the "Privacy Statement"), posted on its website, represents that it "provides a secure server to protect [students'] information. To prevent unauthorized access, maintain data accuracy, and ensure the correct use of information, we have put in place appropriate physical, electronic, and managerial procedures to safeguard and secure information. The Information Technology department at Marymount Manhattan employs various measures to protect the security of its computing resources and its users' accounts."[3]

5. In Defendant's Information Technology Policy (the "Information Technology Policy"), posted on its website, Defendant "recognizes that global access to information provides many opportunities but also many challenges. The commercialization and ubiquity of the internet has allowed hackers, virus writers and professional criminals to attack free and open academic networks."[4]

6. In the Information Technology Policy, Defendant represents that it "will use all reasonable, appropriate, practical, and cost-effective measures to protect its information systems and achieve its security objectives," including as to "[a]ll information stored on applicable information systems."[5]

7. In the Information Technology Policy, Defendant represents that it "safeguards the

_____

[3] Exhibit 1, *available at* https://www.mmm.edu/offices/information-technology/mmc-privacy-statement/ (last visited Aug. 16, 2022).
[4] Exhibit 2 § 1, *available at* https://www.mmm.edu/offices/information-technology/information-security-policy/ (last visited Aug. 16, 2022).
[5] *Id.* § 1.4.

privacy of students, employees, College business, and other matters by protecting electronic records classified as confidential information."[6]

8.      In the Information Technology Policy, Defendant recognizes that it "should gather as little information as possible for legitimate purposes and delete information when it is no longer needed or no longer required by law to be retained."[7]

9.      In the Information Technology Policy, Defendant recognizes that "[a] breach of data security that compromises personal information can lead to identity theft, putting members of the MMC community at risk and exposing the College to litigation."[8]

10.     Defendant's Information Security Plan (the "Information Security Plan"), posted on its website, provides that "covered data," including Social Security numbers, will be protected by "reasonable safeguards to control identified risks to the security, confidentiality, and integrity of that data, and that the effectiveness of these safeguards is monitored regularly."[9]

11.     On November 12, 2021, Defendant learned of a network disruption on its network (the "Data Breach").

12.     Defendant determined that, during the Data Breach, and unknown actor gained access to and obtained the PII of past and current students, employees, parents, and applicants, including Plaintiff and Class Members.

13.     On or around August 3, 2022, Defendant began notifying various states Attorneys General of the Data Breach.

14.     On or around August 3, 2022, Defendant began notifying Plaintiff and Class

---

[6] *Id.* § 17.
[7] *Id.* § 17.7.
[8] *Id.* § 18.
[9] Exhibit 3 §§ 2, 4.3, *available at* https://www.mmm.edu/offices/human-resources/information-security-program.php (last visited Aug. 16, 2022).

Members of the Data Breach.

15.     By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.  Defendant admits that the unencrypted PII obtained by an unknown actor included student ID, date of birth, Social Security Number, employee ID, payment and credit card information, and some other types of information.

16.     The exposed PII of Plaintiff and Class Members can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals.  Plaintiff and Class Members now face a lifetime risk of (i) identity theft, which is heightened here by the loss of Social Security numbers, and (ii) the sharing and detrimental use of their sensitive information.

17.     The PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiff and Class Members.  In addition to Defendant's failure to prevent the Data Breach, Defendant waited several months after the Data Breach occurred to report it to the states' Attorneys General and affected individuals.  Defendant has also purposefully maintained secret the specific vulnerabilities and root causes of the breach and has not informed Plaintiff and Class Members of that information.

18.     As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information. The risk will remain for their respective lifetimes.

19.     Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members;

4

(ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

20.     Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the disclosure of their private information, and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

21.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

22.     Plaintiff Lucia Marano is a citizen of New York residing in Yonkers, New York.

23.     Defendant is a New York Education Corporation with a principal place of business in New York, New York.

24.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff.  Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

25.     All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III. JURISDICTION AND VENUE

26.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member, including one or more of the 6,770 residents of Massachusetts and 75 residents of Montana that Defendant reported were affected by the Data Breach, is a citizen of a state different from Defendant to establish minimal diversity.

27.     Defendant is a citizen of New York because it is an Education Corporation formed under New York law and its principal place of business is in New York, New York.

28.     The Southern District of New York has personal jurisdiction over Defendant because it conducts substantial business in New York and this District.

29.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant operates in this District, Plaintiff provided and entrusted her PII to Defendant in this District,

Defendant sent notice of the Data Breach to Plaintiff and others in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### *Background*

30.     Plaintiff and Class Members, who are past and current students, employees, parents, and applicants to Defendant, provided and entrusted Defendant with sensitive and confidential information, including student ID, date of birth, Social Security Number, employee ID, payment and credit card information, and some other types of information.

31.     Plaintiff and Class Members relied on this sophisticated Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.  Plaintiff and Class Members demand security to safeguard their PII.

32.     Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

### *The Data Breach*

33.     On or about August 3, 2022, Defendant sent Plaintiff and Class Members a *Notice of Data Security Incident*.[10]  Defendant informed Plaintiff and other Class Members that:

**What Happened?**

On November 12, 2021, MMC experienced a network disruption. The College immediately took steps to secure the network environment and engaged cybersecurity experts to conduct an investigation. The investigation determined that an unknown actor gained access to and obtained data from the MMC network without authorization. After a thorough investigation, on July 28, 2022, it

---

[10] Exhibit 4 (sample notice filed with Montana attorney general's office), *available at* https://media.dojmt.gov/wp-content/uploads/Consumer-Notification-Letter-466.pdf (last visited Aug. 16, 2022).

was determined that some of your personal information was involved in the incident. There is currently no reason to believe your information was misused, only that it was potentially accessed.

**What Information Was Involved?**

The personal information involved included your name and your <<Variable Data>>.

**What We Are Doing?**

As soon as the disruption took place, the steps referenced above were taken. Additional security features were also implemented to reduce the risk of a similar incident occurring in the future. The incident was reported to the Federal Bureau of Investigation, and the College is committed to cooperating with investigative requests. You are being further notified of this event and being advised about steps you can take to help protect your information.[11]

34.     Defendant also posted a notice on its website (the "Website Notice") advising that the PII impacted included student ID, date of birth, Social Security Number, employee ID, payment and credit card information, and some other types of information.[12]

35.     On or about August 3, 2022, Defendant notified various state Attorneys General of the Data Breach, including the Attorneys General of Massachusetts and Montana, and provided them "sample" notices of the Data Breach.  Defendant notified the Attorney General of Massachusetts that 6,770 Massachusetts residents were affected by the Data Breach and notified the Attorney General of Montana that 75 Montana residents were affected by the Data Breach.

36.     Defendant admitted in the *Notice of Data Security Incident*, the letters to the Attorneys General, the "sample" notices of the Data Breach, and the Website Notice that an unauthorized actor obtained sensitive information about Plaintiff and Class Members, including student ID, date of birth, Social Security Number, employee ID, payment and credit card

---

[11] *Id.*

[12] Exhibit 5, *available at* https://www.mmm.edu/offices/information-technology/cybersecurity/ (last visited Aug. 16, 2022).

information, and some other types of information.

37.     In response to the Data Breach, Defendant claims that it "has installed new state-of-the-art cybersecurity software on our systems and devices" and taken additional measures to reduce the risk of a similar incident from happening again."[13] However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with regulators or Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

38.     The unencrypted PII of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members.  Unauthorized individuals can easily access the PII of Plaintiff and Class Members.

39.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII for more than 6,770 individuals.

40.     Because Defendant had a duty to protect Plaintiff's and Class Members' PII, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

41.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

42.     In October 2019, the Federal Bureau of Investigation published online an article

---

[13] *Id.*

titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[14]

43.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "*[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies*.  They breach networks, use specialized tools to maximize damage, *leak corporate information on dark web portals*, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[15]

44.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that *"[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data* if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[16]

45.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting healthcare companies such as Defendant, (ii) ransomware gangs were ferociously aggressive in

---

[14] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited Jan. 25, 2022).

[15] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), *available at* https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Jan. 25, 2022).

[16] U.S. CISA, Ransomware Guide – September 2020, *available at* https://www.cisa.gov/sites/default/files/publications/CISA_MS ISAC_Ransomware%20Guide_S508C_.pdf (last visited Jan. 25, 2022).

their pursuit of big companies such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

46.     In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of more than 6,700 individuals in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

47.     Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

48.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Defendant Acquires, Collects, and Stores the PII of Plaintiff and Class Members.***

49.     As a condition of being a past or current students, employee, parent, or applicant to Defendant, Defendant required that Plaintiff and Class Members entrust Defendant with highly confidential PII.

50.     Defendant acquired, collected, and stored the PII of Plaintiff and Class Members.

51.     By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

52.     Plaintiff and Class Members have taken reasonable steps to maintain the

11

confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### *Securing PII and Preventing Breaches*

53.      Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

54.      Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

55.      Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

56.      The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[17] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[18]

---

[17] 17 C.F.R. § 248.201 (2013).

[18] *Id.*

57.     The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

*Value of Personal Identifiable Information*

58.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[19] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[20] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[21]

59.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get

---

[19] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 26, 2022).

[20] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Jan. 26, 2022).

[21] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Dec. 29, 2020).

calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[22]

60.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

61.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[23]

62.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.  The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

63.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the

---

[22] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Jan. 26, 2022).

[23] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed Jan. 26, 2022).

black market."[24]

64.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

65.     The fraudulent activity resulting from the Data Breach may not come to light for years.

66.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

67.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

68.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will

---

[24] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Jan. 26, 2022).

[25] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Mar. 15, 2021).

continue to incur such damages in addition to any fraudulent use of their PII.

69.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data contained in Defendant's folders and files, amounting to potentially tens of thousands of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

70.    To date, Defendant has offered Plaintiff and Class Members whose Social Security numbers were impacted only two years of credit monitoring and identity theft detection through IDX. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

71.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

*Plaintiff's Experience*

72.    From approximately 1995 to 2000, Plaintiff was a student at Defendant.  As a condition of being a student at Defendant, Defendant required that she provide and entrust her PII.

73.    Plaintiff received Defendant's Notice of Data Security Incident, dated August 3, 2022, on or about that date.  The notice stated that Plaintiff's name and Social Security number were obtained by an unknown actor.

74.    As a result of the Data Breach, Plaintiff's sensitive information was acquired by an unauthorized actor.  The confidentiality of Plaintiff's sensitive information has been irreparably harmed.  For the rest of her life, Plaintiff will have to worry about when and how her sensitive information may be shared or used to her detriment.

75.    As a result of the Data Breach notice, Plaintiff spent time dealing with the

consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice

of Data Security Incident and self-monitoring her accounts. This time has been lost forever and

cannot be recaptured.

76.     Additionally, Plaintiff is very careful about sharing her sensitive PII. She has never

knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

77.     Plaintiff stores any documents containing her sensitive PII in a safe and secure

location or destroys the documents. Moreover, she diligently chooses unique usernames and

passwords for her various online accounts.

78.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result

of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

79.     Plaintiff has suffered imminent and impending injury arising from the substantially

increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social

Security number, being placed in the hands of unauthorized third parties and possibly criminals.

80.     Plaintiff has a continuing interest in ensuring that her PII, which, upon information

and belief, remains backed up in Defendant's possession, is protected and safeguarded from future

breaches.

**V. CLASS ALLEGATIONS**

81.     Plaintiff brings this nationwide class action on behalf of herself and on behalf of all

others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of

Civil Procedure.

82.     The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> All individuals whose PII was compromised in the data breach that
> is the subject of the Notice of Data Security Incident that Defendant
> sent to Plaintiff and Class Members on or around August 3, 2022
> (the "Nationwide Class").

83. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

84. Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

85. Numerosity, Fed R. Civ. P. 23(a)(1): The Nationwide Class (the "Class") are so numerous that joinder of all members is impracticable. Defendant have identified tens of thousands of individuals whose PII was compromised in the Data Breach, and the Class is apparently identifiable within Defendant's records. Defendant advised the Attorney General of Massachusetts that the Data Breach affected 6,770 Massachusetts residents.

86. Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

   a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

   b. Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

   c. Whether Defendant had duties not to use the PII of Plaintiff and Class Members for non-business purposes;

    d.   Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

    e.   When Defendant actually learned of the Data Breach;

    f.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

    g.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

    h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    i.   Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

    j.   Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

    k.   Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

    l.   Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

    m.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

87.    <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance.

88.     <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole.  Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

89.     <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class.  Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

90.     <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim,

it would still be economically impractical and impose a burden on the courts.

91.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

92.     The litigation of the claims brought herein is manageable.  Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

93.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

94.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

95.     Further, Defendant have acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the

Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

96.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

      a.  Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

      b.  Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

      c.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

      d.  Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

      e.  Whether Defendant breached the implied contract;

      f.  Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII had been compromised;

      g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

      h.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and,

      i.  Whether Class Members are entitled to actual, consequential, and/or nominal

damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

97.     Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 9.

98.     As a condition of being past and current students, employees, parents, and applicants to Defendant, Plaintiff and Class Members were obligated to provide and entrust Defendant with certain PII.

99.     Plaintiff and the Nationwide Class provided and entrusted their PII to Defendant the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and not disclose their PII to unauthorized third parties.

100.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Nationwide Class could and would suffer if the PII were wrongfully disclosed.

101.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Nationwide Class involved an unreasonable risk of harm to Plaintiff and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

102.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiff and the Nationwide Class in Defendant's possession was adequately secured and protected.

103.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove

23

from an Internet-accessible environment the PII it was no longer required to retain pursuant to regulations and had no reasonable need to maintain in an Internet-accessible environment.

104.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Nationwide Class.

105.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Nationwide Class.  That special relationship arose because Plaintiff and the Nationwide Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

106.    Defendant were subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Nationwide Class.

107.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Nationwide Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

108.    Plaintiff and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures.  Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Nationwide Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

109.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein.  Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiff and the Nationwide Class, including basic encryption techniques freely available to

24

Defendant.

110.    Plaintiff and the Nationwide Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

111.    Defendant were in a position to protect against the harm suffered by Plaintiff and the Nationwide Class as a result of the Data Breach.

112.    Defendant had and continue to have a duty to adequately disclose that the PII of Plaintiff and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Nationwide Class to (i) take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties and (ii) prepare for the sharing and detrimental use of their sensitive information.

113.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Nationwide Class.

114.    Defendant have admitted that the PII of Plaintiff and the Nationwide Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

115.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Nationwide Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Nationwide Class during the time the PII was within Defendant's possession or control.

116.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Nationwide Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

117.    Defendant failed to heed industry warnings and alerts to provide adequate

safeguards to protect the PII of Plaintiff and the Nationwide Class in the face of increased risk of theft.

118.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of the PII.

119.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove from the Internet-accessible environment any PII it was no longer required to retain pursuant to regulations and which Defendant had no reasonable need to maintain in an Internet-accessible environment.

120.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Nationwide Class the existence and scope of the Data Breach.

121.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the PII of Plaintiff and the Nationwide Class would not have been compromised.

122.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class.  The PII of Plaintiff and the Nationwide Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

123.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual

identity theft; (ii) the loss of the opportunity of how its PII is used; (iii) the compromise, publication, and/or theft of its PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of its PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to its PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Nationwide Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Nationwide Class.

124.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

125.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

126.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class are entitled to recover actual, consequential, and nominal damages.

## COUNT II
### BREACH OF IMPLIED CONTRACT
#### (On Behalf of Plaintiff and the Nationwide Class)

127.    Plaintiff re-alleges and incorporate by reference herein all of the allegations contained in paragraphs 1 through 98.

128.    Defendant's Privacy Statement, posted on its website, represents that it "provides a secure server to protect [students'] information. To prevent unauthorized access, maintain data accuracy, and ensure the correct use of information, we have put in place appropriate physical, electronic, and managerial procedures to safeguard and secure information. The Information Technology department at Marymount Manhattan employs various measures to protect the security of its computing resources and its users' accounts "take[s] great effort to protect patient confidentiality and privacy."[26]

129.    In its Information Technology Policy, posted on its website, Defendant

   a.  represents that it "will use all reasonable, appropriate, practical, and cost-effective measures to protect its information systems and achieve its security objectives," including as to "[a]ll information stored on applicable information systems."[27]

   b.  represents that it "safeguards the privacy of students, employees, College business, and other matters by protecting electronic records classified as confidential information."[28]

---

[26] Exhibit 1.
[27] Exhibit 2 § 1.4.
[28] *Id.* § 17.

      c.   recognizes that it "should gather as little information as possible for legitimate purposes and delete information when it is no longer needed or no longer required by law to be retained."[29]

130.    Defendant's Information Security Plan, posted on its website, provides that "covered data," including Social Security numbers, will be protected by "reasonable safeguards to control identified risks to the security, confidentiality, and integrity of that data, and that the effectiveness of these safeguards is monitored regularly."[30]

131.    In being past and current students, employees, parents, and applicants to Defendant, Plaintiff and Nationwide Class Members provided and entrusted their PII to Defendant.

132.    Defendant's website confirms that Defendant intended to bind itself to protect the PII that Plaintiff and Nationwide Class Members submitted to Defendant.

133.    Defendant required Plaintiff and Nationwide Class Members to provide and entrust their PII as condition of being past and current students, employees, parents, and applicants to Defendant.

134.    As a condition of being past and current students, employees, parents, and applicants to Defendant, Plaintiff and Nationwide Class Members provided and entrusted their PII. In so doing, Plaintiff and Nationwide Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such PII, to keep such PII secure and confidential, and to timely and accurately notify Plaintiff and Nationwide Class Members if their PII had been compromised or stolen.

135.    Plaintiff and the Nationwide Class Members fully performed their obligations under the implied contracts with Defendant.

---

[29] *Id.* § 17.7.
[30] Exhibit 3 §§ 2, 4.3.

136.     Defendant breached the implied contracts it made with Plaintiff and Nationwide Class Members by (i) failing to use all reasonable, appropriate, practical, and cost-effective measures to protect its information systems and achieve its security objectives, (ii) failing to protect electronic records classified as confidential information, including by failing to encrypt Social Security numbers and other sensitive PII, (iii) failing to delete PII it no longer had a reasonable need to maintain (including the PII of Plaintiff, who was a student more than twenty (20) years ago), (iv) failing to implement reasonable safeguards to control identified risks to the security, confidentiality, and integrity of the PII, (v) failing to regularly monitor the effectiveness of these safeguards, and (vi) otherwise failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that PII was compromised as a result of the data breach.

137.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Nationwide Class Members have suffered (and will continue to suffer) the threat of the sharing and detrimental use of their sensitive information; ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

138.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Nationwide Class Members are entitled to recover actual, consequential, and nominal damages.

<u>**COUNT III**</u>
**Violations of the New York General Business Law § 349**
**(On Behalf of Plaintiff and the Nationwide Class)**

139.    Plaintiff re-alleges and incorporate by reference herein all of the allegations

contained in paragraphs 1 through 98.

140.    Defendant's Information Technology Department is located on the 4th floor of

Carson Hall at Defendant's campus in New York, New York.[31]

141.    Defendant's Privacy Statement, posted on its website, represents that it "provides a

secure server to protect your information. To prevent unauthorized access, maintain data accuracy,

and ensure the correct use of information, we have put in place appropriate physical, electronic,

and managerial procedures to safeguard and secure information. ***The Information Technology***

***department at Marymount Manhattan*** employs various measures to protect the security of its

computing resources and its users' accounts."[32]

142.    The Privacy Statement directs questions about the Privacy Notice or Defendant's

"data collection practices" to (i) the Executive VP of Financial and Administration and CFO and

(ii) the Assistant Vice President for Information Technology.

143.    The Information Technology Department is responsible for the accuracy of the

representations made in the Privacy Statement.

144.    The Information Technology Department is responsible for protecting the PII of

Plaintiff and Class Members, including providing a secure server for the PII and putting in place

appropriate physical, electronic, and managerial procedures to safeguard and secure the PII.

145.    The Privacy Statement represents that Defendant "provides a secure server to

protect [students'] information. To prevent unauthorized access, maintain data accuracy, and

---

[31] *See* https://www.mmm.edu/offices/information-technology/ (last visited Aug. 16, 2022).
[32] Exhibit 1 (emphasis added).

ensure the correct use of information, we have put in place appropriate physical, electronic, and managerial procedures to safeguard and secure information. The Information Technology department at Marymount Manhattan employs various measures to protect the security of its computing resources and its users' accounts "take[s] great effort to protect patient confidentiality and privacy."[33]

146.    In its Information Technology Policy, posted on its website, Defendant

    a.  represents that it "will use all reasonable, appropriate, practical, and cost-effective measures to protect its information systems and achieve its security objectives," including as to "[a]ll information stored on applicable information systems."[34]

    b.  represents that it "safeguards the privacy of students, employees, College business, and other matters by protecting electronic records classified as confidential information."[35]

    c.  recognizes that it "should gather as little information as possible for legitimate purposes and delete information when it is no longer needed or no longer required by law to be retained."[36]

147.    Defendant's "Information Protection Committee (IPC) is responsible and accountable for ensuring hat the objectives of the security policy are met."[37]

148.    Defendant's "Chief Information Officer is responsible for implementation of the policy."[38]

---

[33] *Id.*
[34] Exhibit 2 § 1.4.
[35] *Id.* § 17.
[36] *Id.* § 17.7.
[37] *Id.* § 1.5.
[38] *Id.*

32

149.   Defendant's Information Security Plan, posted on its website, provides that "covered data," including Social Security numbers, will be protected by "reasonable safeguards to control identified risks to the security, confidentiality, and integrity of that data, and that the effectiveness of these safeguards is monitored regularly."[39]

150.   Defendant's Chief Information Officer is responsible for implementing and maintaining the Information Security Plan.[40]

151.   Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

   a.   misrepresenting that it would use all reasonable, appropriate, practical, and cost-effective measures to protect its information systems and achieve its security objectives;

   b.   misrepresenting that it would protect electronic records classified as confidential information, despite failing to encrypt Social Security numbers and other sensitive PII;

   c.   misrepresenting that it would delete PII it no longer had a reasonable need to maintain, despite failing to delete the PII of Plaintiff, who was a student more than twenty (20) years ago;

   d.   misrepresenting that it would implement reasonable safeguards to control identified risks to the security, confidentiality, and integrity of the PII; and

   e.   misrepresenting that it would regularly monitor the effectiveness of these safeguards.

_____

[39] Exhibit 3 §§ 2, 4.3.
[40] *Id.* § 4.1.

152.     Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII that Plaintiff and the Nationwide Class entrusted to Defendant, and that risk of a data breach or theft was highly likely.

153.     Defendant should have disclosed this information because Defendant was in a superior position to know the true facts related to the defective data security.

154.     Defendant's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff and the Nationwide Class) regarding the security of Defendant's network and aggregation of PII.

155.     The representations upon which consumers (including Plaintiff and the Nationwide Class) relied were material representations (*e.g.*, as to Defendant's adequate protection of PII), and consumers (including Plaintiff and the Nationwide Class) relied on those representations to their detriment.

156.     Defendant's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. As a direct and proximate result of Defendant's conduct, Plaintiff and the Nationwide Class have been harmed, in that they were not timely notified of the Data Breach, which resulted in profound vulnerability to their personal information and other financial accounts.

157.     As a direct and proximate result of Defendant'' unconscionable, unfair, and deceptive acts and omissions, the PII of Plaintiff and the Nationwide Class was disclosed to third parties without authorization, which has caused and will continue to cause damage to Plaintiff and the Nationwide Class.

158.    Plaintiff and the Nationwide Class seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

### COUNT IV
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Nationwide Class)**

159.    Plaintiff re-alleges and incorporate by reference herein all of the allegations contained in paragraphs 1 through 98.

160.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

161.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII.  Plaintiff allege that Defendant's data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Plaintiff continue to suffer injury as a result of the compromise of their PII and remains at imminent risk that further compromises of their PII will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

162.    Plaintiff and Class Members have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including (i) Defendant's failure to encrypt Plaintiff's and Class Members' PII, including Social Security numbers, while storing it in an Internet-accessible environment and (ii) Defendant's failure to delete PII it has no reasonable need to

maintain in an Internet-accessible environment, including the Social Security number of Plaintiff, who was a student at Defendant approximately 20 years ago.

163.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a.   Defendant owes a legal duty to secure the PII of past and current students, employees, parents, and applicants to Defendant;

      b.   Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII; and

      c.   Defendant's ongoing breaches of its legal duty continue to cause Plaintiff harm.

164.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry and government regulatory standards to protect consumers' PII. Specifically, this injunction should, among other things, direct Defendant to:

      d.   engage third party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

      e.   audit, test, and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

      f.   regularly test its systems for security vulnerabilities, consistent with industry standards;

      g.   implement an education and training program for appropriate employees regarding cybersecurity.

165.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such

breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

166.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

167.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and others whose confidential information would be further compromised.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Nationwide Class and appointing Plaintiff and her Counsel to represent such Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and

Class Members, including but not limited to an order:

i.   prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.   requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.   prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any

38

new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.   requiring Defendant to conduct regular database scanning and securing checks;

xi.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and

assess whether monitoring tools are appropriately configured, tested, and updated;

    xv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

   xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands that this matter be tried before a jury.

Date: August 17, 2022             Respectfully Submitted,

                                     /s/ Jonathan M. Sedgh
                                     Jonathan M. Sedgh
                                     MORGAN & MORGAN
                                     850 3rd Ave, Suite 402

Brooklyn, NY 11232
Phone: (212) 738-6839
Fax: (813) 222-2439
Email:jsedgh@forthepeople.com

John A. Yanchunis*
Ryan D. Maxey*
**MORGAN & MORGAN COMPLEX**
**BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

*Attorneys for Plaintiff and the Proposed Class*

*\*pro hac vice applications pending*